UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

ELSEVIER B.V., ELSEVIER INC.,        :
and MOSBY, INC.,
                                     :

                  Plaintiffs,        :

       -against-                     :         09 Civ. 2124 (WHP)

                                     :

UNITEDHEALTH GROUP, INC., ACN
GROUP, INC., OPTIMUM CHOICE,         :
INC., OVATIONS, INC., UNIPRISE,
INC., UNITED BEHAVIORAL HEALTH,      :
INC., INGENIX, INC., and ABC
COMPANY NOS. 1-10,                   :

                  Defendants.  :

- - - - - - - - - - - - - - - - - - -x


MEMORANDUM OF LAW OF PLAINTIFFS IN SUPPORT OF THEIR
MOTION FOR A RULING THAT 17 U.S.C. § 412 IS UNCONSTITUTIONAL
TO THE EXTENT THAT IT REQUIRES REGISTRATION AS A CONDITION
OF AN AWARD OF STATUTORY DAMAGES AND ATTORNEYS' FEES
FOR INFRINGEMENT OF A BERNE CONVENTION COPYRIGHT


DUNNEGAN LLC
Attorneys for Plaintiffs
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

## Table of Contents

Preliminary Statement........................................1

Argument....................................................3

I.   TO THE EXTENT THAT 17 U.S.C. § 412
     CONDITIONS AN AWARD OF STATUTORY DAMAGES
     AND ATTORNEYS' FEES FOR INFRINGEMENT OF A
     BERNE CONVENTION COPYRIGHT ON REGISTRATION
     OF THAT COPYRIGHT, § 412 CONFLICTS WITH
     ARTICLE 5 OF THE BERNE CONVENTION.....................3

     A.   The Berne Convention Prohibits
          Formalities From Interfering With "The
          Enjoyment And The Exercise" Of A Copyright........3

     B.   17 U.S.C. § 412 De Facto Conditions "The
          Enjoyment And The Exercise" Of The Right
          To Sue For Copyright Infringement On The
          Formality Of Registration........................4

     C.   Congress Did Not Fully Consider The
          Economic Realities Of Copyright Litigation
          In Determining Whether § 412 Conflicted
          With The Berne Convention........................7

II.  THE BERNE CONVENTION RENDERS THE REGISTRATION
     REQUIREMENT OF 17 U.S.C. § 412 UNCONSTITUTIONAL
     INSOFAR AS § 412 APPLIES TO BERNE CONVENTION
     COPYRIGHTS...........................................9

     A.   The United States Acceded To The
          Berne Convention After Congress
          Enacted 17 U.S.C. § 412.........................10

     B.   Article 5 Of The Berne Convention Is
          Self-Executing Under United States Law..........10

Conclusion.................................................17

En-tête — la navigation

<u>Table of Authorities</u>

<u>Cases</u>

<u>Bacardi Corp. of America v. Domenech</u>,
311 U.S. 150, 61 S. Ct. 219 (1940).......................14,15

<u>Carell v. The Shubert Organization, Inc.</u>,
104 F. Supp. 2d 236 (S.D.N.Y. 2000).........................3

<u>Football Ass'n Premier League Ltd. v. YouTube, Inc.</u>,
2009 U.S. Dist. LEXIS 57438 (S.D.N.Y. 2009).................3

<u>Foster v. Neilson</u>,
27 U.S. 253, 7 L.Ed. 415 (1829),
overruled by <u>United States v. Percheman</u>,
32 U.S. 51 (1833).......................................9,16

<u>In Re Dr. Matthias Rath</u>,
402 F.3d 1207 (Fed. Cir. 2005).............................13

<u>Int'l Cafe, S.A.L. v. Hard Rock Cafe</u>
<u>Int'l (U.S.A.), Inc.</u>,
252 F.3d 1274 (11th Cir. 2001).............................13

<u>ITC, Ltd. v. Punchgini, Inc.</u>,
482 F.3d 135 (2d Cir. 2007) ...............................13

<u>Lidas, Inc. v. United States</u>,
238 F.3d 1076 (9th Cir. 2001)...............................9

<u>Mannington Mills, Inc. v. Congoleum Corp.</u>,
595 F.2d 1287 (3d Cir. 1979)...............................13

<u>Medellin v. Texas</u>,
128 S. Ct. 1346 (2008)..........................9,10,14,15,16

<u>Ortman v. Stanray Corp.</u>,
371 F.2d 154 (7th Cir. 1967)...............................13

<u>The Bridgeman Art Library, Ltd. v. Corel Corp.</u>,
36 F. Supp. 2d 191 (S.D.N.Y. 1999).........................3

<u>Trans World Airlines, Inc. v. Franklin Mint Corp.</u>,
466 U.S. 243, 104 S. Ct. 1776 (1984).......................15

<u>United States v. Postal</u>,
589 F.2d 862 (5th Cir. 1979)................................9

<u>Vanity Fair Mills, Inc. v. The T. Eaton Co. Ltd.</u>,
234 F.2d 633 (2d Cir. 1956)..........................11,12-13

<u>Statutes and Rules</u>

17 U.S.C. § 411.........................................2,5

17 U.S.C. § 412..........................2,4,5,6,7,8,9,10,17

17 U.S.C. § 501...........................................4

17 U.S.C. § 504.........................................2,4

17 U.S.C. § 505...........................................2

<u>Other</u>

United States Constitution, Article VI, Clause 2............9

Berne Convention for the Protection of
Literacy and Artistic Works, September 9, 1886,
1 B.D.I.E.L. 715...........................3-4,10,11,12,13,14

Paris Convention for the Protection of
Industrial Property, July 14, 1967,
21 U.S.T. 1583........................................11-12

General Inter-American Convention for
Trade Mark and Commercial Protection,
February 20, 1929, 46 Stat. 2907......................14-15

Note: Internationalizing the Copyright Code:
An Analysis of Legislative Proposals Seeking
Adherence to the Berne Convention,
76 <u>Geo L.J.</u> 467 at 481-2 (1987)............................16

D'Ooge, Craig, <u>Senate Holds Hearing on Copyright Reform Act</u>
(Nov, 15, 1993)
<http://www.loc.gov/loc/lcib/93/9321/hearing.html>...........6

Senate Report No.100-352 (May 20, 1988)......................7

House Report No. 100-609 (May 6, 1988).......................8

Plaintiffs Elsevier B.V., Elsevier Inc., and Mosby, Inc. (collectively "Elsevier") respectfully submit this memorandum in support of their motion for an order that 17 U.S.C. § 412 conflicts with Article 5 of the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"), to the extent that § 412 conditions an award of statutory damages and attorneys' fees for infringement of a Berne Convention copyright on the registration of that copyright, and is therefore unconstitutional under the Supremacy Clause of the United States Constitution.

## Preliminary Statement

This is principally a copyright infringement action. Elsevier owns, or exclusively licenses, the copyrights in the scientific books and journals available on an online database known as ScienceDirect®. Elsevier licenses access to that database to subscribers for a fee. For 2006 and 2007, Elsevier and Ingenix entered into a subscriber agreement for Ingenix to access the ScienceDirect® database. In breach of that subscriber agreement, Ingenix allowed the other defendants, its parents and affiliates, to access the ScienceDirect® database. The other defendants then accessed the database, infringing Elsevier's copyrights. Elsevier's complaint asserts that defendants infringed 9,093 copyrights, representing 1,307 registered copyrights and 7,786 unregistered copyrights.

This motion presents an issue of law concerning the unregistered copyrights.  Article 5 of the Berne Convention prevents a signatory from imposing a formality, such as registration, that interferes with "the enjoyment and the exercise" of a protected right, including the right to sue for copyright infringement.  While 17 U.S.C. § 411 allows an owner of an unregistered non-United States copyright to file a lawsuit for infringement, 17 U.S.C. § 412 does not allow that copyright owner to recover statutory damages under 17 U.S.C. § 504 or attorneys' fees under 17 U.S.C. § 505.  Section 412 therefore conflicts with Article 5 of the Berne Convention because imposing registration as a requirement to obtain statutory damages and attorneys' fees is an economic barrier to suit in most cases.  Because the United States acceded to the Berne Convention after the enactment of § 412, and because the relevant provisions of the Berne Convention are self-executing, this Court should hold that § 412 is unconstitutional, under the Supremacy Clause, to the extent that it conditions an award of statutory damages and attorneys' fees for infringement of a Berne Convention copyright on the registration of that copyright.

Neither the Supreme Court nor (to our knowledge) any Circuit Court has addressed this issue.  Certain district courts have held that the Berne Convention is not a self-executing

2

treaty, but without engaging in the analysis presented here.
<u>Football Ass'n Premier League Ltd. v. YouTube, Inc.</u>, 2009 U.S.
Dist. LEXIS 57438 at *11 (S.D.N.Y. 2009); <u>Carell v. The Shubert</u>
<u>Organization, Inc.</u>, 104 F.Supp. 2d 236, 259 (S.D.N.Y. 2000); <u>The</u>
<u>Bridgeman Art Library, Ltd. v. Corel Corp.</u>, 36 F.Supp. 2d 191,
195 (S.D.N.Y. 1999).  This Court is therefore writing on an
essentially clean slate.

<u>Argument</u>

I.

TO THE EXTENT THAT 17 U.S.C. § 412 CONDITIONS AN AWARD OF
STATUTORY DAMAGES AND ATTORNEYS' FEES FOR INFRINGEMENT OF A
BERNE CONVENTION COPYRIGHT ON REGISTRATION OF THAT COPYRIGHT,
§ 412 CONFLICTS WITH ARTICLE 5 OF THE BERNE CONVENTION

A.       The Berne Convention Prohibits
         Formalities From Interfering With "The
         <u>Enjoyment And The Exercise" Of A Copyright.</u>

         Article 5 of the Berne Convention prevents a
signatory, including the United States, from imposing
formalities as a condition for "the enjoyment and the exercise"
of Berne Convention copyrights.  Article 5 provides in
applicable part:

> "(1) Authors shall enjoy, in respect of works for
> which they are protected under this Convention, in
> countries of the Union other than the country of
> origin, the rights to which their respective laws do
> now or may hereafter grant to their nationals, as well
> as the rights specially granted by this Convention.
>
> (2) <u>The enjoyment and the exercise of these rights</u>
> <u>shall not be subject to any formality</u>; such enjoyment
> and such exercise shall be independent of the

3

existence of protection in the country of origin of
the work. Consequently, apart from the provisions of
this Convention, the extent of protection, as well as
the means of the redress afforded to the author to
protect his rights, shall be governed exclusively by
the laws of the country where protection is claimed."
(Emphasis added.)

Berne Convention for the Protection of Literacy and Artistic

Works, Sept. 9, 1886, 1 B.D.I.E.L. 715.  In the United States,

these rights include the right to sue for copyright

infringement. 17 U.S.C. § 501.

B.        17 U.S.C. § 412 De Facto Conditions "The Enjoyment
          And The Exercise" Of The Right To Sue For Copyright
          Infringement On The Formality Of Registration.

          17 U.S.C. § 412 provides that a copyright owner

cannot, subject to narrow exceptions not applicable in this

action, recover statutory damages pursuant to 17 U.S.C. § 504

absent a registration for that copyright.  17 U.S.C. § 412

provides:

          "§ 412    Registration as prerequisite to certain
                    remedies for infringement

          In any action under this title, other than an action
          brought for a violation of rights of the author under
          section 106A(a), an action for infringement of the
          copyright of a work that has been preregistered under
          408(f) before the commencement of the infringement and
          that has an effective date of registration not later
          than the earlier of 3 months after the first
          publication of the work or 1 month after the
          copyright owner has learned of the infringement, or
          an action instituted under section 411(c), no award of
          statutory damages or of attorney's fees, as provided
          by sections 504 and 505, shall be made for-

> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) <u>any infringement</u> of copyright commenced after first publication of the work and <u>before the effective date of its registration</u>, unless such registration is made within three months after the first publication of the work." (Emphasis added.)

While 17 U.S.C. § 411 <u>de jure</u> grants owners of non-United States copyrights the right to file an action for infringement of an unregistered copyright, the expense of United States copyright litigation <u>de facto</u> eliminates that right if statutory damages are not available, except in cases involving significant amounts of actual damages or profits.  The declarations of Robert J. Bernstein, Esq. and Gerard F. Dunne, Esq. demonstrate that fact.  The declaration of Robert J. Bernstein, sworn to September 25, 2009, provides:

> "11. It is my opinion that § 412 of the Copyright Act of the United States ('the Act'), 17 U.S.C. § 412, substantially inhibits the enforcement of infringement claims by holders of copyrights that were not registered with the U.S. Copyright Office prior to the commencement of the infringements, by making such registration a prerequisite to obtaining the remedies of statutory damages and attorney's fees under §§ 504 and 505 of the Act.  The basis for my opinion, derived from 30 years of practicing copyright law and litigation, is set forth below."

The declaration of Gerard F. Dunne, sworn to September 28, 2009, provides:

> "I have given advice many times to clients (and prospective clients) that the ability to enforce a

5

copyright effectively depends largely on the ability
to collect attorney fees and/or statutory damages in
the event of an infringement.  In far too many
situations involving infringement of a copyright, the
actual damages resulting from the infringement or the
expected legal fees and expense of litigation to
vindicate the rights of the copyright owner make an
enforcement action untenable unless the copyright
owner has the ability to collect statutory damages or
attorney fees against a recalcitrant infringer,
particularly where the infringer has the financial
ability to protract litigation and essentially force
the legal fees and expenses of enforcement to become
prohibitive.  From my understanding and knowledge in
handling many infringement litigations, I know that
many copyright owners must as a practical matter in
today's litigation environment forgo the opportunity
to enforce their copyrights in a court of law if the
requirements for registration of Section 412 of the
United States Copyright Act of 1976 are to be
applied."

The former Register of Copyrights shared this view:

"According to Barbara Ringer, who played a major role
in revising the copyright law in 1976 when she was
Register of Copyrights, these sections were written
back in the 1960's, when the costs of litigation were
less.  Many people who unknowingly fail to register
now find it all but impossible to retain the services
of an attorney unless they have the possibility of
recovering the fees for his or her services.  In
addition, these sections could be interpreted as
'formalities,' (i.e., requirements that make copyright
contingent upon certain acts) that are prohibited by
the Berne Convention, the world copyright treaty that
the United States joined in 1989." D'Ooge, Craig,
<u>Senate Holds Hearing on Copyright Reform Act</u> (Nov. 15,
1993), <http://www.loc.gov/loc/lcib/93/9321/
hearing.html>

Section 412 therefore conflicts with Article 5 of the Berne

Convention.

C.       Congress Did Not Fully Consider The Economic
         Realities Of Copyright Litigation In Determining
         Whether § 412 Conflicted With The Berne Convention.

In deciding not to amend § 412 in the Berne Convention

Implementation Act of 1989, the Senate applied an incorrect test

to determine whether § 412 conflicts with the Berne Convention.

The Senate Report No. 100-352, dated May 20, 1988, provides at

14:

> "After considering extensive testimony and submissions
> on this topic, the committee has concluded that
> section 411(a) in its current form is incompatible
> with Article 5(2) of Berne. The committee recognizes
> that this conclusion is not free from doubt, but on
> the record before it, the committee is persuaded that
> the requirement of registration as a prerequisite to
> an infringement lawsuit is a prohibited formality. On
> the other hand, it has concluded that the statutory
> incentives for registration contained in the
> provisions of sections 410(c), 412, and 205 of the
> Copyright Act are not preconditions for the 'enjoyment
> and exercise' of copyright. While those provisions
> substantially enhance the relief available to the
> proprietor of a registered work, they do not condition
> the availability of all meaningful relief on
> registration, and therefore are not inconsistent with
> Berne." (Emphasis added.)

Contrary to the Senate Report, Article 5 of the Berne

Convention does not prohibit only those formalities that

"condition the availability of all meaningful relief."  Rather,

Article 5 prohibits formalities that impair "the enjoyment and

the exercise" of a right.  Thus, the fact that some cases

involving large amounts of actual damages or profits can proceed

without the availability of statutory damages and attorneys'

fees is irrelevant. Most cases cannot. In most cases, § 412 impairs the right of an owner of a Berne Convention copyright to file and prosecute an infringement action, and therefore violates Article 5 of the Berne Convention.

Similarly, the House of Representatives concluded that registration as a prerequisite for an award of statutory damages did not violate the Berne Convention because statutory damages concerned only the issue of remedies. The House Report No. 100-609, dated May 6, 1988, provides:

> "[I]t is agreed that two of the three inducements to registration--the presumption of validity and statutory damages are compatible with Berne. The former satisfies Berne because it affects the ordering of proof and the latter because it affects remedies."

The House failed to recognize that the availability of statutory damages impacts not only the remedy in an infringement action, but also whether it is economically feasible for a copyright owner to file an action for infringement of an unregistered copyright.

Once the Court finds that § 412 conflicts with the Berne Convention, the Court must determine whether Article 5 of the Berne Convention renders § 412 unconstitutional.

II.

THE BERNE CONVENTION RENDERS THE REGISTRATION
REQUIREMENT OF 17 U.S.C. § 412 UNCONSTITUTIONAL
INSOFAR AS § 412 APPLIES TO BERNE CONVENTION COPYRIGHTS

The Supremacy Clause of the United States
Constitution, Article VI, Clause 2, provides that "all Treaties
. . . which shall be made . . . under the Authority of the
United States, shall be the supreme law of the land . . ."
Courts should therefore regard "a treaty . . . as equivalent to
an act of the legislature, whenever it operates of itself
without the aid of any legislative provision." Foster v.
Neilson, 27 U.S. 253, 314, 7 L.Ed. 415, 436 (1829), overruled on
other grounds by United States v. Percheman, 32 U.S. 51 (1833).
A treaty may contain both self-executing and non-self-executing
provisions. Lidas, Inc. v. United States, 238 F.3d 1076, 1080
(9th Cir. 2001); United States v. Postal, 589 F.2d 862, 884 n.35
(5th Cir. 1979).

To determine whether the Berne Convention renders the
registration requirement of § 412 unconstitutional insofar as it
applies to Berne Convention copyrights, the Court should make
two determinations.  First, the Court should determine whether
the Berne Convention post-dated § 412.  "[A] later-in-time
federal statute supersedes inconsistent treaty provisions."
Medellin v. Texas, 128 S. Ct. 1346, 1359 (2008)(citing Cook v.
United States, 288 U.S. 102, 119-120, 53 S. Ct. 305, 311

9

(1933)).  Second, the Court should determine whether Article 5 of the Berne Convention is self-executing, meaning whether that treaty provision "has automatic domestic effect as federal law upon ratification." <u>Medellin</u>, <u>supra</u>, 128 S. Ct. at 1356 fn. 2.

A.      The United States Acceded
        To The Berne Convention After
        <u>Congress Enacted 17 U.S.C. § 412.</u>

        Congress enacted 17 U.S.C. § 412 as part of the Copyright Act of 1976, effective January 1, 1978.  The United States acceded to the Berne Convention effective March 1, 1989. Accordingly, in a conflict with § 412, the Berne Convention should control provided that Article 5 is self-executing under United States law.

B.      Article 5 Of The The Berne Convention
        <u>Is Self-Executing Under United States Law.</u>

        The issue of whether the Berne Convention, or certain provisions of it, are self-executing under United States law requires an interpretation of the treaty.  That interpretation should begin with an examination of its text.  <u>Medellin</u>, <u>supra</u>, 128 S. Ct. 1346 at 1357.  The text of the Berne Convention demonstrates, in at least three ways, that Article 5 represents controlling domestic law without any further legislation.

        <u>First</u>, parties acceding to the Berne Convention represent (not merely promise) that their domestic law gives

10

effect to the Berne Convention.  Article 36 of the Berne
Convention provides:

> "(1) Any country party to this Convention
> undertakes to adopt, in accordance with its
> constitution, the measures necessary to ensure the
> application of this Convention."
>
> (2) <u>It is understood that, at the time a country
> becomes bound by this Convention, it will be in a
> position under its domestic law to give effect to the
> provisions of this Convention.</u>"  (Berne Convention for
> the Protection of Literacy and Artistic Works, Sept.
> 9, 1886, 1 B.D.I.E.L. 715(Emphasis added.)

In <u>Vanity Fair Mills, Inc. v. The T. Eaton Co. Ltd.</u>,
234 F.2d 633 (2d Cir. 1956), the Second Circuit indicated that
the Paris Union, which contains virtually identical language to
Article 36 of the Berne Convention, is self-executing. 234 F.2d
at 640.  The Paris Union, like the Berne Convention, provides
that signatories represent that upon accession their domestic
law gives effect to the treaty.  Article 25 of the Paris Union
provides:

> "(1) Any country to this Convention undertakes to
> adopt, in accordance with its constitution, the
> measures necessary to ensure the application of this
> Convention.
>
> (2) It is understood that, at the time a country
> deposits its instrument of ratification or accession,
> it will be in a position under its domestic law to
> give effect to the provisions of this Convention."
> (Paris Convention for the Protection of Industrial
> Property, July 14, 1967, 21 U.S.T. 1583.)

The slight textual difference between Article 25(2) of
the Paris Union and Article 36(2) of the Berne Convention is

immaterial.  Article 25(2) of the Paris Union provides that the
signatory will be in a position to give effect to the treaty
under its domestic law when it "deposits its instrument of
ratification or accession."  Article 36(2) of the Berne
Convention provides that the signatory will be in a position to
give effect to the treaty under its domestic law when it
"becomes bound," which under Article 29(2) of the Berne
Convention is when it deposits its instrument of accession:

> "... this Convention shall enter into force with
> respect to any country outside the Union three months
> after the date on which the Director General has
> notified the deposit of its instrument of accession,
> unless a subsequent date has been indicated in the
> instrument deposited.  In the latter case, this
> Convention shall enter into force with respect to that
> country on the date thus indicated."

Accordingly, under both the Paris Union and the Berne
Convention, a signatory become bound not by passing domestic
legislation but by depositing an instrument of accession.  Thus,
if as the Second Circuit has suggested the Paris Union is self-
executing, then so is the Berne Convention, at least insofar as
it concerns Article 5.

In commenting on whether the Paris Union was self-
executing or non-self-executing, the Second Circuit stated:

> "Plaintiff asserts that the International Convention
> for the Protection of Industrial Property (Paris
> Union), 53 Stat. 1748 (1883, as revised 1934),
> T.S.No.941, to which both the United States and Canada
> are parties, is self-executing; that by virtue of
> Article VI of the Constitution it is a part of the law

of this country which is to be enforced by its courts; and that the Convention has created rights available to plaintiff which protect it against trade-mark infringement and unfair competition in foreign countries. <u>Plaintiff would appear to be correct in arguing that no special legislation in the United States was necessary to make the International Convention effective here</u>, but it erroneously maintains that the Convention created private rights under American law for acts of unfair competition occurring in foreign countries." (<u>Vanity Fair Mills, Inc.</u>, <u>supra</u>, 234 F.2d at 640)(Footnote omitted; Emphasis added.)[1]

See <u>ITC, Ltd. v. Punchgini, Inc.</u>, 482 F.3d 135, 161 (2d Cir. 2007)(Court suggested plaintiff could rely upon <u>Vanity Fair</u> for the proposition that "upon ratification by Congress, the Paris Convention required 'no special legislation in the United States . . . to make [it] effective here'").

Second, the Berne Convention expressly grants authors certain rights. Article 5(1), which is at the core of this motion, provides:

> "Authors <u>shall</u> enjoy... the rights which their respective laws do now or may hereafter grant to their nationals, as well as rights specifically granted by this Convention." (Emphasis added.)

See <u>also</u> Article 2(6), Article 2bis(3) Article 4, Article 5(1), Article 7(1), Article 8, Article 9(1), Article 10(1), Article

---

[1] Other Circuits have held that the Paris Union is not a self-executing treaty. <u>Mannington Mills, Inc. v. Congoleum Corp.</u>, 595 F.2d 1287, 1298-99 (3d Cir. 1979); <u>Ortman v. Stanray Corp.</u>, 371 F.2d 154, 157 (7th Cir. 1967); <u>Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.</u>, 252 F.3d 1274, 1277 n.5 (11th Cir. 2001); <u>In Re Dr. Matthias Rath</u>, 402 F.3d 1207, 1209 (Fed. Cir. 2005).

11(a), Article 11(2), Article 11bis(1), Article 11ter(1), Article 11ter(2), Article 13(1), Article 14(1), Article 14bis(1), Article 19.  By consistently using the language authors "shall," the Berne Convention guarantees minimum rights. Compare Medellin, supra, 128 S. Ct. at 1358 ("[The treaty] does not, provide that the United States 'shall' or 'must' comply with an ICJ decision.")

Third, the Berne Convention does not provide that domestic legislation is necessary to create domestic law. Treaty provisions that lack references to future legislation are generally self-executing.  For example, in Bacardi Corp. of America v. Domenech, 311 U.S. 150, 61 S. Ct. 219 (1940), Bacardi sued the Treasurer of Puerto Rico for a declaration that a statute that discriminated against the owner of certain foreign trademarks was unconstitutional as inconsistent with the General Inter-American Convention for Trademarks and Commercial Protection ("Inter-American Convention").  It provides:

> "Article 1. The contracting States bind themselves to grant to the nationals of the other Contracting States and to domiciled foreigners who own a manufacturing or commercial establishment or an agricultural development in any of the States which have ratified or adhered to the present Convention the same rights and remedies which their laws extend to their own nationals or domiciled persons with respect to trade marks, trade names, and the repression of unfair competition and false indications of geographical origin or source.

> *   *   *

14

> Article 35. The provisions of this Convention shall
> have the force of law in those States in which
> international treaties possess that character, as soon
> as they are ratified by their constitutional organs."
> General Inter. American Convention for Trademark and
> Commercial Protection, Feb. 20, 1929, 46 Stat. 2907.

In the absence of any reference in the treaty to the need for subsequent legislation to give it domestic effect, the Supreme Court held:

> "This treaty on ratification became a part of our law.
> No special legislation in the United States was
> necessary to make it effective." 311 U.S. at 161; 61
> S. Ct. at 225.

See Trans World Airlines, Inc. v. Franklin Mint Corp., 466 U.S. 243, 252, 104 S. Ct. 1776, 1783 (1984)("[T]he [Warsaw] Convention is a self-executing treaty.").

Finally, the Court should distinguish the Berne Convention from treaties the Supreme Court has held to be non-self-executing.  In Medellin, supra, the Supreme Court held that decisions of the International Court of Justice ("ICJ") would not have binding effect in the United States.  The Court reasoned that the Vienna Convention on Consular Relations, the Optional Protocol Concerning the Compulsory Settlement of Disputes to the Vienna Convention and the United Nations Charter ("UNC") contemplated that decisions of the ICJ would not become domestic law without legislative action.  For example, Article 94(1) of the UNC provided that "[e]ach Member of the United

Nations undertakes to comply with the decision of the [ICJ] in any case to which it is a party." 128 S. Ct. at 1358.  The Court reasoned that "undertakes," in the absence of the words "shall," or "must," indicated that the UNC did not intend to create without further legislation domestic law. Id.  Similarly, in Foster, supra, 27 U.S. at 310, the Supreme Court held a treaty to be non-self executing because its text, which provided "all... grants of land... shall be ratified and confirmed," contemplated further legislation before the land grants became domestic law.

The fact that Congress indicated in 17 U.S.C. § 104(c) that the Berne Convention was not a self-executing treaty is not controlling, as this is an issue for the Judiciary to resolve. Medellin, supra, 128 S. Ct. at 1365.  In declaring that the Berne Convention was not "self-executing," Congress made a political decision to satisfy certain interest groups.  "Note: Internationalizing the Copyright Code: An Analysis of Legislative Proposals Seeking Adherence to the Berne Convention," 76 Geo. L. J. 467 at 481-2 (1987).  The Executive, with the advice and consent of the Senate, caused the United States to accede to the Berne Convention, and represented that the United States "was in a position under its domestic law to give effect to the provisions of this convention."  The fact that Congress made a political

16

decision to cross its fingers behind its back should not nullify the obligations that Article 5 of the Berne Convention creates.

## Conclusion

For the reasons set forth above, Elsevier respectfully requests that the Court rule that 17 U.S.C. § 412 (i) conflicts with Article 5 of the Berne Convention to the extent that § 412 conditions an award of statutory damages under 17 U.S.C. § 504 for an infringement of a Berne Convention Copyright on the registration of that copyright, and (ii) is therefore unconstitutional to that extent.

Dated: New York, New York
       September 28, 2009

                                    DUNNEGAN LLC

                              By  _William Dunnegan_
                                  William Dunnegan  (WD0415)
                                  wd@dunnegan.com
                                  Laura Scileppi (LS0114)
                                  ls@dunnegan.com
                                  Attorneys for Plaintiffs
                                  350 Fifth Avenue
                                  New York, New York 10118
                                  (212) 332-8300